IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID SELESKIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 24-cv-07896 |
| | ) | |
| EXOTIC MOTORS, INC., | ) | Trial by Jury Demanded |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, David Seleskie ("Seleskie"), by his undersigned attorneys, complains against Defendant Exotic Motors, Inc. as follows:

## Statement of the Case

1. On or about April 12, 2022, David Seleskie purchased a used 2020 Honda Ridgeline (VIN #5FPYK3F1XLB021532) ("Ridgeline") from Exotic Motors, Inc. in which it misrepresented the condition of the car and concealed the fact that the car was a dangerous rebuilt wreck with substandard repairs.

2. Seleskie paid $27,990.00 for the Ridgeline. *See* Exhibit 1.

3. Seleskie purchased the Ridgeline after viewing the Ridgeline on Exotic's website. Seleskie viewed the online listing (Exhibit 2) and the misleading CarFax Report (Exhibit 3) linked to the online listing, which does not list any accident damage and has misleading photographs that hide the accident damage, before deciding to purchase the Ridgeline. The Online listing stated in relevant part:

> Quality Assurance: Each vehicle in our inventory undergoes rigorous inspection and certification process to ensure utmost quality and performance. Drive with confidence knowing every car meets our exacting standards!!!

4. Seleskie purchased the Ridgeline after being deceived by Exotic by its online listing and over the telephone by its salesman, Sean. Exotic took advantage of the fact that this was an online out of state purchase and that Seleskie, who lived in Minnesota, did not view the Ridgeline in person prior to or at the time of sale and; therefore, he could not see the obvious defective condition of the vehicle that the delivery driver saw, and immediately informed him of when asking for directions to deliver the Ridgeline to Seleskie's home.

5. Exotic deceived Seleskie by misrepresenting and omitting numerous material facts about the Ridgeline including the following misrepresentations or knowing omission made during the oral sales communications with Seleski and in the online listing and CarFax Report linked thereto, The salesman stated that the Ridgeline was in "immaculate condition" and that the accident damage in one photograph was just a minor scratch that could simply be buffed out. The online listing stated that the Ridgeline had passed a "rigorous" "certification inspection", ensuring that it was of the "utmost quality and performance." Exotic also provided a link in its online listing to a misleading CarFax Report which showed no accidents knowing that CarFax only reports information reported to it and that the Report therefore omitted to disclose the easily seen and extensive poorly and inadequately repaired accident damage to the Ridgeline. CarFax reports as Exotic knew state in the fine print that the reports are only as accurate as the information provided to CarFax.

6. Exotic knowingly omitted to disclose from the language in the website listing and the photographs shown therein for the Ridgeline and in its oral sales communications, the many negative material facts concerning the Ridgeline all of which substantially reduce its value which made it dangerous to drive.

2

7. In reliance and after viewing on the online advertisement, and the omissions in the CarFax Report linked thereto and in reliance on the salesman Sean's and Exotic's material misrepresentations and knowing omissions of material fact, Seleskie purchased the Ridgeline.

8. Had Seleskie known the truth about the Ridgeline's extensive damage and dangerous condition, he would not have purchased it.

9. When Seleskie discovered Exotic's fraud when he was informed by the delivery driver and when he inspected the Ridgeline on delivery, he contacted Exotic and asked it to unwind the transaction, Exotic refused, forcing Seleskie to file this suit.

10. Exotic has engaged in similar frauds for well over a decade and has been the subject of many consumer fraud lawsuits and arbitrations for similar fraudulent conduct.

**Parties**

11. Plaintiff David Seleskie is a citizen of Minnesota and resides in Hastings, Minnesota.

10. Exotic Motors, Inc. is a corporation registered in Illinois with its principal place of business located in Rolling Meadows, Illinois.

**Jurisdiction and Venue**

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as Plaintiff and Defendant are completely diverse and the amount in controversy exceeds $75,000, excluding costs and interest. Seleskie suffered approximately $17,467.49 in diminished value damages. He also suffered at least $10,000 in emotional distress, aggravation and inconvenience damages. Seleskie' s counsel has obtained an aggravation, inconvenience, and emotional distress damage award of $10,000 in a similar case in a consumer fraud arbitration against a differed used car dealer.

12. Seleskie is entitled to punitive damages of over $82,401.00 in an amount to be

determined by the jury because of the willful and wanton nature of the Defendant's misconduct which includes putting a dangerous vehicle on the roads that could injure Seleskie and others, all in violation of the Illinois Motor Vehicle Code and Illinois public policy. Also, Exotic has been the subject of many similar consumer fraud lawsuits for more than a decade and engages in recidivist conduct. This repeated disregard for the safety of its customers and the public warrants a large punitive damage award to force it to stop its repeated fraudulent conduct that victimizes consumers in Illinois and across the country through its online fraud. Given that Exotic has been sued so many times and still engages in the same deliberate misconduct and continues to falsely touts on its website that all its used cars undergo a rigorous safety inspection a punitive damages award of 4-5 times actual damages is in order as opposed to the more standard treble damages punitive damages award.

13. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because the events or omissions giving rise to Plaintiff's claims against Defendant occurred in this district.

**Facts**

14. On or about May 23, 2024, Seleskie saw Exotic's online video listing for the Ridgeline. The online listing (Exhibit 2) stated in relevant part:

> Quality Assurance: Each vehicle in our inventory undergoes rigorous inspection and certification process to ensure utmost quality and performance. Drive with confidence knowing every car meets our exacting standards!!!

Seleskie reviewed Exotic's listing and its false assurances and relied upon it.

15. The listing also had a link to a Carfax Report (Exhibit 3) which Seleskie also reviewed and relied upon. The Carfax Report did not report any accidents or accident damage.

16. Exotic misused the CarFax Report (which showed no accidents reported to CarFax) in a deceptive and misleading manner to induce Seleskie to contact it and to ultimately purchase

4

the Ridgeline. The CarFax Report, like all Carfax Reports, only discloses information that has been reported to CarFax (its disclaimer is hidden in the fine print in the Report) and is not proof that the Ridgeline had not suffered severe accident damage and it is not proof that it had only been in one accident if the accident is not reported to CarFax. Information about severe or even minor accidents and structural damage is only disclosed by CarFax if it is reported to CarFax. In short, CarFax reports, as the fine print in all CarFax reports state, are only as accurate as the information reported to CarFax. Since most consumers do not know about the material shortcoming in CarFax reports, used car dealers often use the reports in a misleading manner as Exotic did here. In fact, although not reported by CarFax, the Ridgeline had substantial unrepaired or improperly repaired accident damage which a cursory inspection by a knowledgeable used car dealer would have readily revealed.

17. In reliance on the online listing and the CarFax Report linked to it, on or about May 23, 2024, Seleskie contacted Exotic and discussed the Ridgeline with a salesman named Sean. Sean told Seleskie the Ridgeline was in "immaculate condition" and was a clean title car with only one prior owner who had returned it at the end of a lease. Seleskie asked about the small damage that appeared near a door on the photographs provided to him by Exotic in its online listing. Sean told Seleskie that it was a scratch that would be buffed out and that the interior would be cleaned before delivery. He emphasized that the Ridgeline was in immaculate condition.

18. Sean misrepresented the condition of the Ridgeline and omitted to disclose material negative information about the Ridgeline just the online listing did. As photographs taken by Seleskie prove (Exhibit 4), the Ridgeline suffered from a lot of substantial accident damage and in fact was a poorly repaired rebuilt wreck.

5

19. After being assured by Sean that the Ridgeline was in immaculate condition and that one visible item of minor damage could be buffed out, on May 24, 2024, Seleskie agreed to purchase the Ridgeline. Exotic and Sean induced Seleskie's purchase through misrepresentations and knowing omissions of material fact.

20. But for the misrepresentations and knowing omissions by Exotic in the online advertisement and in Sean's later oral misrepresentations and knowing omissions, Seleskie would not have agreed to purchase the Ridgeline sight unseen through an online listing and a telephone conversation.

21. Seleskie agreed to purchase the Ridgeline on Mary 24, 2024. Seleskie paid $28,877.03 which included a $27,990.00 Selling Price, $358.03 Documentary Fee, License and Registration fee, $30.00 Title Fee, and $499.00 Dealer Prep fee. Exhibit 1.

22. Seleskie's photographs demonstrate the following defects: misaligned or loose lower body cladding, variations in paint tone or color, ill-fitting bumper cover, non-OEM (Original Equipment Manufacturer) welds present on the upper frame apron, several body imperfections, possible non-OEM body crimps on the apron, and bent or misaligned components in the engine compartment. Exhibit 4. All of these accident-related damages were easily seen from a cursory inspection of the vehicle.

23. The accident damage and the substandard condition of the Ridgeline would have been obvious to any experienced used car dealer and therefore Exotic knew of the Ridgeline's substandard condition at the time of sale. In fact, when the delivery driver called Seleskie to ask for directions to Seleskie's home, the driver stated in words or substance: "You sound like a nice guy. Are you aware of that the Vehicle looks like? It is a wreck."

24. Confirming the delivery driver's observations, Seleskie observed numerous material negative items regarding the Ridgeline after delivery. Seleskie made a list of the problems with the Ridgeline that were visible to him and would have been seen by Exotic prior to Seleskie's purchase:

> Front end and bumper damage
> Lower front fascia painted with undercoating
> Grille in lower fascia damage
> Front bumper close out missing
> Under carriage damage
> Front exhaust damage 3 spots Front
> frame scraped and gouged Front
> cross member support bent
> Transfer case shield all bent and damaged Upper
> shield all banged up retainers missing
> Scrapes and scratches on the left front and before left front wheel Left
> front wheel damage
>
> Left side cladding damage
> Left front door scratched all the way to the box
> Left rear wheel opening molding damage
> Left mirror damage
> Left front fender liner not attached correctly
> Left B pillar molding damage left front wheel opening molding damage Left
> B pillar odd damage tried to PDR dent- paint gone from damage Left rear
> tail lamp damage
>
> No spare-jack-tools
>
> Numerous clips for molding and inner fenders missing - Honda has specific clips- at least 100 missing
>
> Right B pillar molding damage
> Right front inner fender liner missing Right
> rear tail lamp damage
> Rear fascia has been painted with rubberized undercoating to hide damage and also left hand chrome molding damage
> All tailgate and upper box side plastic molding beat up- not normal use
> Right front door lower molding damage
> Right front wheel and tire damage Right
> rear door molding damage
> Right lower cladding loose and missing retainers Right
> rear wheel damage

7

    Right front door has had a skin put on -job seam sealer still tacky
    Rear upper box hail dents and damage

25.    A BADVIN Report[1] for the Ridgeline states that Exotic obtained the Ridgeline on December 21, 2023, with 22,576 miles. <u>Exhibit 5</u>. The BADVIN report states that Exotic first offered the Ridgeline for sale on March 6, 2024, followed by a dealer auction listing on March 8, 2024, with 22,576 miles. After Exotic listed the Ridgeline at a dealer auction for over a month, the "Vehicle was noticed on sale on classifieds" on April 14, 2024, with the same 22,576 miles. The BADVIN Report has numerous records of the Ridgeline for sale at either classified consumer or dealer auction listing sites for the period before Seleskie's purchase on May 20, 2024, with the same 22,576 miles. Exotic's repeated offering of this low mileage Ridgeline for sale for more than six-months, with no test drive mileage accumulated, is a tell-tale sign this vehicle has evidence of ill repairs, visual damage, and other defects as in fact is the case and no other potential buyer was interested. The Ridgeline did not, or does not, show or perform like other 2020 low mileage Ridgelines.

26.    Seleskie has suffered actual damages of over $27,467.49. This includes the following: (a) $17,467.49 in damages resulting from the diminished value of Ridgeline and excess interest charges; and (b) aggravation, inconvenience, and emotional distress damages of $10,000. Seleskie's counsel has obtained an aggravation, inconvenience, and emotional distress damage award of $10,000 in a similar case in a consumer fraud arbitration against a different used car dealer. The objectionable behavior and the client's situation and reaction, however was very similar.

27.    Seleskie is also seeking over $82,401.00 in punitive damages due to the willful, wanton and repeated nature of Exotic's conduct. Exotic has repeatedly sold dangerous rebuilt

---

[1]    BAVIN reports are similar to CarFax reports.

wrecks and it did so knowingly. Exotic has engaged in recidivist conduct; it has fraudulently sold severely damaged cars over and over and over. The large number of lawsuits and arbitrations against Exotic for well over a decade have not stopped its similar misconduct. A treble damage punitive damage award would not therefore be sufficient. Exotic is a candidate for a damage multiplier of up to 5 times actual damages to force it to finally stop its recidivist conduct.

28.  Exotic refused Seleskie's request to unwind the transaction. This lawsuit followed Exotic's refusal.

## **COUNT I**

**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)**

29.  Seleskie repeats and realleges herein Paragraphs 1-28.

30.  The Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/2, states in relevant part that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful…

31.  Additionally, the Illinois Motor Vehicle Code makes it "unlawful for any person to . . . knowingly permit to be driven or moved on any highway any vehicle . . . which is in such unsafe condition as to endanger any person or property …" 625 ILCS 5/12-101(a).

32.  Thus, Exotic had a statutory obligation not to put unsafe cars on the road by deceiving Seleskie into purchasing an unsafe car.

33.  Seleskie is a consumer within the meaning of 815 ILCS 505/1(e).

34.  Exotic's sale of the Ridgeline constituted the sale of merchandise in commerce as defined by 815 ILCS 505/1(b).

9

35. Exotic misrepresented the following material facts in violation of the Consumer Fraud Act as alleged in paragraph 3-5 and 14-16 above.

36. In violation of the Consumer Fraud Act, Exotic knowingly omitted to disclose the material facts that the Ridgeline had numerous structural and mechanical defects as more fully set forth in paragraph above (and in the photographs contained in Exhibit 4).

37. Exotic knowingly failed to disclose the damaged and unsafe condition of the Ridgeline which made the vehicle un-merchantable, in sub-standard condition, and dangerous to drive both to its occupants and the public. Exotic had knowledge of these facts as Exotic inspected the Ridgeline pursuant to a rigorous certification process before selling it to Seleskie and Exotic is an expert in determining the condition of used cars.

38. Exotic intended for Seleskie to rely on misrepresentations, half-truths, and/or knowing omissions of material fact. Exotic knew that a reasonable consumer like Seleskie would not have purchased the Ridgeline if he knew its true history and condition. Exotic also knew that Seleskie would not have purchased the Ridgeline if he had known it was damaged and unsafe to drive.

39. Exotic knew that the Ridgeline was un-merchantable, in sub-standard condition, and dangerous to drive. Any car dealer, based on a simple visual inspection would have known immediately that the Ridgeline was un-merchantable, in sub-standard condition, and dangerous to drive. The inspection of the Ridgeline was made under Exotic's ownership and therefore it knew that the Ridgeline was un-merchantable, in sub-standard condition, and dangerous to drive.

40. Had Seleskie known the truth about the Ridgeline, he would not have purchased it.

41. As a direct and proximate result of Defendant's fraud, Seleskie suffered damages of over $27,467.49, including, but not limited to:

a. Paying an inflated price for the Ridgeline and the additional finance charges and taxes relating thereto;

b. Aggravation, inconvenience, and emotional distress damages;

42. Seleskie's diminished value damages, exclusive of aggravation, inconvenience and emotional distress damages are as follows:

| | |
|---|---|
| Diminishment of Ridgeline | $14,990.00 |
| Estimated Finance Cost $14,990 at 6.19% for 60 months | $2,477.49 |
| **TOTAL DAMAGES** | **$17,467.49** |

43. Seleskie also suffered aggravation, inconvenience, and emotional distress damages of $10,000.

44. Seleskie has the option of unwinding the transaction and seeking recission damages and will make such election before trial.

45. Defendant's conduct was willful and wanton, calling for the imposition of punitive damages of well over $82,401.00 (only 3 times actual damages with a larger multiplier fully justified) from continuing in order to punish and deter similar conduct in the future and to stop Defendant violate the Illinois Vehicle Code by putting unsafe cars on the road. Punitive damages are also appropriate because Defendant has engaged in this same type of conduct in the past and has been sued in court or arbitration many times as a result thereof. A punitive damages award of 4-5 times actual damages is appropriate here due to Exotic's over a decade of recidivist conduct.

WHEREFORE Plaintiff David Seleskie requests that judgment be entered in his favor and against Defendant Exotic Motors as follows:

A. Actual damages in an amount to be proven at trial or recission of the transaction;

B. The costs incurred in this litigation, including expert fees;

C. Attorneys' fees;

D. Aggravation, inconvenience, and emotional distress damages;

E. Punitive damages; and

F. Any other relief that the Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to FRCP 38(b), Plaintiff requests a trial by jury on the claims so triable.

Dated: August 27, 2024           DAVID SELESKIE

By: /s/ Peter S. Lubin
One of his Attorneys

| | |
|---|---|
| Peter S. Lubin<br>Patrick Austermuehle<br>LUBIN AUSTERMUEHLE, P.C.<br>17W220 22nd Street, Suite 410<br>Oakbrook Terrace, IL 60181<br>(630) 333-0333<br>peter@l-a.law<br>patrick@l-a.law | Terrence Buehler<br>LAW OFFICES OF TERRENCE BUEHLER<br>417 N. Marion Street<br>Oak Park, IL 60302<br>(312) 371-4385<br>tbuehler@tbuehlerlaw.com |

James V. DiTommaso
DiTommaso Law Group LLC
17W220 22nd Street Suite 410
Oakbrook Terrace, IL 60181
(630) 333-0000
jvd@ditommasolaw.com